Dohoney, J.
This is an action of tort brought for personal injuries resulting from the plaintiff, David S. Hill, being struck in the head by a golf ball driven by the defendant, Lawrence OToole, while both were playing golf at the Edgewood Golf Course, owned and operated by defendants Henry Bosma and Marlene Bosma. Hill, a minor, brought the action through his mother, Karen Hill; she and David’s father, Theodore Hill, also brought claims for medical expenses and loss of parental consortium.
From the report, we learn that David, age 15 at the time of the incident, was playing golfwith three others and was about to chip onto thefifth green. He was standingwith his back to the sixth tee. OToole drove a ball off the 6th forward tee, and that ball hooked toward Hill and hit him behind the left ear. Both Hill and OToole had seen each other prior to the shot, but Hill testified that he did not see OToole in the process of teeing up his ball.
The claims for personal injury of Hill and for medical expenses and loss of consortium by Karen and Theodore Hill are against the Bosmas due to failure and negligence in supervising and/ or designing and/or maintaining the golf course and failing to provide a safe area for patrons, and against OToole for negligence in driving the golf ball which struck plaintiff Hill.
Both OToole and the Bosmas raised the affirmative defense of contributory negligence. The Bosmas brought a cross-claim against the defendant OToole for contribution.
OToole moved for summary judgment on the grounds that the plaintiff had assumed the risk and was therefore barred from making a claim. At the hearing, OToole raised the new issue that the standard of care owed to a participant in a sporting event should be recklessness and not ordinary negligence. The Court denied OToole’s motion for summary judgment.
At trial, OToole moved for a required finding that recovery is limited to proof of reckless or willful conduct. The Bosmas moved for a required finding that Massachusetts General Laws Chapter 260, Section 2B, a statute of repose, barred the plaintiffs’ claims against them. OToole filed a request for rulings of laws. The Bosmas filed requests for rulings of law, and suggested findings of fact.
The Court found for the plaintiff, Karen Hill, as mother and next friend of Hill and against the defendants jointly and severally in the amount of $42,000. The Courtfound for the plaintiff, Karen Hill, individually, against the defendants jointly and severally in theamountof $10,700.TheCourtfoundforthedefendants upon the Counts brought *129 by the plaintiff, Theodore Hill.
The defendants Bosma claim to be aggrieved by the denial of their motion for required finding that Massachusetts General Laws Chapter260 §2B bars the plaintiffs claim against them for negligent design. The Bosmas also claim to be aggrieved on the Court’s finding of no contributory negligence on the part of the plaintiff. In addition, the defendants Bosma claim to be aggrieved by the Court’s action on requests for rulings concerning the sufficiency of evidence to find negligence, proximate cause, and failure to maintain the premises in a safe condition, and on whether the risk, of being hit by a golf ball is an obvious and inherent risk of the game of golf.
The defendant OToole claims to be aggrieved by the Court’s denial of his motion for required finding that recovery is limited to proof of reckless or willful misconduct, by the denial of his motion for summary judgment, and by denial of his requests for rulings of law concerning the standard of care to be applied in actions for personal injuries in athletic events and concerning the issue of plaintiffs assumption of risk.
CLAIMS OF DEFENDANTS BOSMA
1. Claim that Massachusetts General Law Chapter260, Section 2B precludes action by the plaintiff against the defendant for the design of the golf course:
This statute is a statute of repose which precludes recovery in actions arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property after six years following the substantial completion or the opening of the improvement to use: The time limit is related to the date of completion or opening and not related to the accrual of any cause of action. Klein v. Catalano, 386 Mass. 701 (1982).
The report states that the original golf course was designed and built in the 1930’s, was later run as a dairy farm, and was converted back to a golf course, based on the original design, by Henry Bosma and his mother in the 1950’s. No evidence was presented at trial to dispute that the course was designed by someone other than the Bosmas sometime in the 1930’s. There was no evidence of any design by the Bosmas within six years. Thus, any claim for negligent design must fail.
2. Issue of proximate cause and negligence:
Defendants Bosma claim that the evidence was insufficient to establish by a preponderance of the evidence that the Bosmas were negligent or that any negligence on the part of the Bosmas was a proximate cause of the plaintiffs injuries. The trial court heard testimony from the plaintiffs expert witness that the Bosmas were negligent in allowing the public to play without netting, fences or relocation of the 6th forward tee. The Bosmas presented expert witness testimony that it was the actions of the players and not the design or maintenance of the 6th tee and the 5th green nor the lack of warnings which were the cause of the injury. Both the plaintiffs expert witness on cross examination and the defendant’s expert witness stated that the use of such safety precautions is the exception and not the rule. The Bosmás claim that they should be held only to the standard of care of a reasonably prudent person under the circumstances, not to an exception, and thatforeseeability of an injury alone is not sufficient grounds to establish negligence. The Bosmas further claim that no evidence was given of any considerations other than foreseeability, such as feasibility of alternate designs or standard practice in the industry, to show what a reasonably prudent golf course owner would have done in this circumstance.
The owner and operator of a golf course has a duty to “exercise reasonable care to keep the premises in a reasonably safe condition for their use, and to warn them against any dangers which he knows or ought to know they might encounter while upon the premises and which they reasonably could not be expected to know.” *130 Reardon v. Country Club of Coonamesset, 353 Mass. 702, 704 (1968). To impose liability, thepremises owner musthavefailed to actas areasonablyprudentpersonwouldhave acted under the same or similar circumstances, considering the “likelihood of injury to others, the seriousness of injury, and the burden of avoiding the risk.” Gilhooley v. Star Market, 400 Mass. 205, 207 (1987), quoting Mounsey v. Ellard, 363 Mass. 693, 708 (1973).
In order to show a trial court’s finding is unwarranted because of insufficiency of evidence, it mustbe shown that the finding was clearly erroneous. “Afinding is ‘clearly erroneous’ when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” Freyermuth v. Lufty, 376 Mass. 612, 615 (1978), quoting Marlow v. New Bedford, 369 Mass, 501, 508 (1976). Here, the court had both the testimony of experts and the viewing of the premises to assist in making the finding of negligence. From that the court could assess not only the foreseeability of injury but also the gravity of harm likely to resultand the burden of avoiding therisk,atleasttotheextentofposting a warning. This court is not left with a firm conviction that a mistake has been committed; this trial court had sufficient evidence to balance these factors and make its findings.
The Bosmas also claim that there is insufficient evidence to show proximate cause because there is no evidence that any precautions taken by the Bosmas would have prevented the injury. Again, the Court had the benefit of its view of the golf course as well as expert testimony from a designer of golf courses that safely devices could have and should have been installed and that warnings or instructions should have been installed showing how to proceed from the 6th forward tee when in close proximity to players around the 5th green. There was sufficient evidence from which a trier of fact could make the determination of proximate cause necessary to afinding of liability for negligence.
3. Claim that the risks of golf are inherent and obvious as a matter of law:
The Bosmas claim that there is no duty to protect lawful visitors on property from risks which are obvious to persons of average intelligence, that golf is a sport with the inherent risk of being hit by a golf ball, and that they therefore had no duty to protect the plaintiff, who was shown to be of at least average intelligence, from the risk of being hit by a golf ball. In support of this the Bosmas cite Thorson v. Mandell, 402 Mass, 744 (1988), where no liability was found when a YMCA did not warn those in a dance rehearsal of their policy that no gymnastics be performed on the auditorium stage; the courtfound that there was an inherent risk in the dance step being performed and that there was no reason to perform gymnastics in an auditorium when a gymnasium was provided for that purpose. In the instant case, the premises were being used for their intended purpose and even though there may be risks inherent in golf, the premises operator has the duty to maintain and operate the premises under the Reardon standard, supra at 5; the inherent and obvious nature of any risk is one factor in that analysis.
4. Claim of contributory negligence of Hill:
The Bosmas claim that the plaintiff was contributorily negligent because he failed to make his presence known to the defendant or take himself out of the range of OToole’s ball, knowing that golf etiquette gives the right of way to the player on the forward hole to play before the player at the lower numbered hole. The Court found no negligence whatsoever by the plaintiff, and the Bosmas now claim this finding was clearly erroneous.
In order for a trial court’s finding of fact to be set aside it mustbe clearly erroneous. The Freyermuth standard applies. Supra at 5.
The report shows that Hill observed OToole standing in the vicinity of the 6th tee; *131 OToole was not at that time teeing up his ball. There is no evidence to show whether it might be obvious that he was about to tee up the ball. The report also states that OToole testified that Hill was not in the line of intended flight of his ball when he did tee off. The Court viewed both photographs of the area and the site itself. From this the reviewing court is not left with the firm conviction that a mistake has been made and the finding of no contributory negligence is therefore not set aside as clearly erroneous.
There is thus no error found in the court’s rulings and findings as they pertain to the defendants Bosmas.
DEFENDANT OTOOLE’S CLAIMS
1. Claim of assumption of the risk:
OToole claimed in his motion for summary judgment that the plaintiff had assumed the risk and was therefore barred from making a claim. At the hearing, OToole also raised for the first time the issue of the standard of care owed to a voluntary participant in a sporting event, arguing that recklessness and not ordinary negligence was the applicable standard. The court correctly denied the motion for summaiy judgment. Assumption of the risk has been abolished as a defense to negligence in Massachusetts. Massachusetts G.L.c. 231, §85 (1986 Ed.)
2. Claim that recklessness is the standard of care:
OToole claims that the court erred in applying ordinary negligence as the standard of care between participants in an athletic event. Initially, we must determine what standard the Trial Justice did apply. OToole filed the following request for ruling:
In order for a party to recover damages for personal injuries arising out of an athletic event, that party must show that the defendant’s actions were predicted (sic) on reckless misconduct....
The Trial judge allowed the request. However, in this report the Trial Justice stated
Additionally, OToole claims to be aggrieved by the Court’s ruling on his Request for Rulings of Law. Specifically, the Court allowed Defendant’s Request as to the Finding in Gauvin v. Clark, 404 Mass. 450, regarding the standard of care to be applied in actions arising out of athletic events, but did not apply that standard here.
Although the trial justice did not make findings of fact, our reading of his actions indicate that he recognized Gauvin as a correct statement of law but did not think it applicable here. The major distinction between Gauvin and our case is that hockey is a contact sport and golf is not.
Thus, we are presented with the issue as to whether the standard of reckless conduct applies in a non-contact sport. OToole claims that it does and claims that the court erred in applying ordinary negligence as the standard of care between participants in an athletic event. OToole bases this claim on Gauvin v. Clark, 404 Mass. 450 (1989), a case of first impression in Massachusetts. The Supreme Judicial Court held that “ [P] articipants in an athletic event owe a duty to other participants to refrain from reckless misconduct and liability may result from injuries caused a player by reason of the breach of that duty.” Id. at 451. Because participants in a sporting event agree to undergo some physical contacts which could amount to assault and battery absent the player’s consent, the Court adopted the majority view of other jurisdictions that personal injury cases arising out of an athletic event must be predicated on reckless disregard of safety in order to impose liability. Id. at 454.
*132 The plaintiff argues that Gauvin is a hockey case and should not be applied to golf. He claims that the purpose stated in Gauvin, thatthe competition of athletic events not be chilled by the threat of tort liability for negligence, should apply only to contact sports, not to non-contact sports like golf nor here where the plaintiff and defendant were not competing against each other. The Massachusetts court has not addressed the issue of whether the Gauvin standard applies specifically to the game of golf.
Massachusetts has however, addressed the issue of recovery for negligence after being hit by a golf ball. In Mazzuchelli v. Nissenbaum, 355 Mass. 788 (1969) plaintiff was struck by an errant golf ball and sued in negligence. The plaintiff was an experienced golfer and knew that golf balls hooked and sliced. Plaintiff was playing one hole, and the defendant was playing a different hole which was parallel to the hole being played by plaintiff. Both players were playing their balls from the rough which was between the two fairways. The defendanthithis shot and did not give any warning. The b all struck the plaintiff. The lower court directed a verdict for the defendant. The Supreme J udicial Court held that there was no error. The Court stated that the plaintiff had assumed the risk of such an occurrence.
Other jurisdictions have looked at whether the sport participation exemption from the ordinary care standard of negligence applies in a non-contact sport. The California Supreme Court extended the standard of a duty to avoid recklessness or intentional misconduct to noncompetitive but active sports when looking at the duty owed in water skiing by the boat operator to the skier. Ford v. Govin, 3 Cal. 4th 339, 834 P. 2d 724 (1992). Ohio has extended the standard of reckless conduct to yachting. See Pressler v. U. 70 Ohio App. 3rd 204, 590 NE 2d 873 (1990). However, the Illinois Appellate Court declined to extend the reckless standard to the sport of snow skiing when one skier ran into another. The court said that skiing is not a sport of inherent danger nor a contact sport. Novak v. Virene, 224 Ill. App. 3d 317, 586 NE 2d 578 (1991), cert. denied, 591 NE 2d 24.
The Ohio Supreme Court avoided use of the contact-noncontact distinction in determining the standard of liability for negligence between participants in golf. The court said that there is no liability for injuries caused by negligent conduct. Thompson v. McNeill, 53 Ohio St. 3d 102, 559 NE 2d 705 (1990). Using the some reasoning as Gauvin, the Thompson court found that participation in sports manifests consent to such risks, restrictions of liberty and bodily contacts as are usual for that sport, and the duty of a participant to other participants is limited to a duty not to subject them to acts which create unreasonable risks under the circumstances. The measure of an unreasonable risk under the circumstances of a sporting event “must be delineated with reference to the way the particular game is played, i.e., the rules and customs that shape the participants’ ideas of foreseeable conduct in the course of agame.” Id. at708. There is thus an inverse relationship between duty and dangerousness and whenever recklessness or intentional misconduct is an issue the court should inquire into such factors as “the nature of the sport involved, the rules and regulations which govern the sport, the customs and practices which are generally accepted and which have evolved with the circumstances of the particular case.” Id. at 708, quoting from Hanson v. Kynast, 38 Ohio App. 3d 58, 526 N.ER. 2d 327, (1987). There is thus a spectrum of duties and risks rather then a simple contact-noncontact distinction, so analysis of liability for injuries inflicted in sports “on a continuum along which the standard of care rises as the inherent danger of the sport falls is more useful than distinguishing sports by applying a black-and-white distinction between contact and noncontact sports.” Id. at 708. Interestingly, the Thompson court stated
If, for example, a golfer knows another is within the line of flight of his shot and fails to offer the customary warning of ‘fore,’ liability might accrue. Such conduct could amount to reckless indifference to the rights of others.
*133 See also cases collected in 53 ALR 4th 271.
Because Massachusetts has abolished the doctrine of assumption of the risk, “the focus of the analysis in [sport cases] has shifted entirely to the defendant’s duty under the circumstances and should no longer be discussed in terms of the plaintiffs assumption of the risk.” Gauvin v. Clark, supra at 455, n. 5, quoting Blair v. Mt. Hood Meadows Dev. Corp., 291 Or. 293, 301 (1981). Even though Gauvin is a hockey case and Thompson a golf case, the Ohio courts use of the duty not to commit an intentional tort or reckless misconduct is consistent with Gauvin. The Gauvin holding applies to “participants in an athletic event” and nowhere does the court say that the reckless misconduct standard is limited to contact sports. Both Gauvin and Thompson cite the RESTATEMENT (SECOND) OFTORTS view that participants in a game manifest a willingness to submit to such contacts as are permitted by the rules and usages of the game but not to “contacts which are prohibited by rules or usages of the game if such rules or usages are designed to protect the participants and not merely to secure the better playing of the game as a test of skill.” RESTATEMENT (SECOND) OFTORTS §50 comment b (1965).
Application of the recklessness standard in golf is not inconsistent with the Illinois court’s application of an ordinary negligence standard in skiing. One who skis expects other skiers to be in control and notrun into them. Butcontrol is notan expected factor in golf. “It is common knowledge that a golf ball does not always fly straight toward the intended mark.” Katz v. Gow, 321 Mass. 666, 667 (1947). When agolf ball is hit by a club, anyone within its range in any direction is in peril because golf balls do not always travel straight from the tee but on occasion will slice in one direction or cut in another. Mazzuchelli, supra. Therefore, there is an element of lack of control expected in golf which is not expected in skiing and which is afactor consistent with the Gauvin and Thompson reflection of the expectations of the participants onto the duty imposed on the players. Moreover, in golf a player may wish to take certain shots to reduce his or her score. This determination should not be influenced by the possibility of litigation based on an ordinary negligence standard.
Therefore, liability for injuries in the instant case should be analyzed in terms of the reckless misconduct standard of Gauvin as it relates to the rules and usages of the game of golf. It was thus error for the court to analyze the case under the standard of ordinary negligence.
Thus the report is denied as to the defendants Bosma and allowed as to the defendant OToole. The matter is remanded to the trial justice for action consistent with this opinion.